[No. C018861. Third Dist. Jan. 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
NATIONAL AMERICAN INSURANCE COMPANY, Defendant and
Appellant.

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

L. B. Elam, County Counsel, Robert A. Ryan, Jr., and Elaine P. DiPietro, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**NICHOLSON, J.**—After National American Insurance Company (National), the surety of a bail bond, obtained an order vacating the forfeiture of bail

and exonerating the bond conditioned on the payment of the costs of returning the defendant to custody, National failed to pay the costs. The municipal court entered judgment against National for the full amount of the bond, and National appealed to the appellate department of the superior court. The appellate department affirmed and certified the case for transfer to this court.

We conclude National's contentions are without merit and, therefore, affirm.

## Municipal Court Proceedings

On October 15, 1992, National was notified Richard Tollefson, a criminal defendant for whom National was a surety of a $10,000 bond, failed to appear in court. Less than four weeks later, the bondsman, Ann Hill Bail Bonds, surrendered Tollefson to the sheriff.

National moved to vacate forfeiture of bail, and the municipal court granted the motion on December 21, 1992, stating relief was conditioned on payment of "ninety-four dollars forthwith." On December 23, 1992, the clerk of the municipal court mailed notice to National of the assessed costs, stating the costs were $110 and were due on January 22, 1993.

National never paid the costs. The 180-day period for vacating forfeiture elapsed, and the court entered summary judgment in favor of the People. Later, the court denied National's motion to set aside the summary judgment.

## Discussion

### I

#### *Notice of Due Date for Payment of Costs*

National contends the trial court's use of the word "forthwith" in making the order conditioning relief on the payment of costs rendered the order in excess of the court's jurisdiction. This is so, argues National, because the minimum time for requiring payment of the costs is 30 days after the date notice of the order requiring payment of costs is mailed to the surety. (Pen. Code, § 1305.2 [undesignated code references, hereafter, are to the Penal Code].)

"If an assessment is made a condition of the order to set aside the forfeiture of an undertaking, deposit, or bail under Section 1305, the clerk of

the court shall within 30 days mail notice thereof to the surety or depositor at the address of its principal office and shall execute a certificate of mailing and place it in the court's file in the case. The time limit for payment shall in no event be less than 30 days after the date of mailing of the notice." (§ 1305.2.)

National relies heavily on *People* v. *Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302 [12 Cal.Rptr.2d 343] (*Ranger*). There, the surety posted a bail bond allowing for the release of a criminal defendant. She failed to appear at her sentencing hearing, so the trial court ordered bail forfeited. She was later taken into custody, and the surety moved to vacate forfeiture and exonerate the bond. The court granted the motion on condition the surety pay $1,745.25, representing the cost of housing her in the county jail after her return to custody. The order did not set a date before which payment had to be made. The clerk sent a copy of the order to the surety. The surety failed to pay the housing costs, and the court entered summary judgment for the full amount of the bond. After the court denied the surety's motion to vacate the summary judgment, the surety appealed. (*Id.* at p. 1304.) The Court of Appeal in *Ranger* held the exoneration order was a nullity for its failure to give statutory notice of when the costs had to be paid and, in addition, was beyond the trial court's jurisdiction because the housing costs were not "actual costs of returning the defendant to custody" under section 1306, subdivision (b). (9 Cal.App.4th at pp. 1307-1309.)

*Ranger* is not on point. The surety in that case was not given notice of when the payment of costs was due. Here, the surety was given notice by the clerk that payment of costs was due by 4:30 p.m. on January 22, 1993.

The trial court's use of the term "forthwith" may have been inartful, but it was not extrajurisdictional. A somewhat archaic term (the type of which lawyers and judges are particularly fond), "forthwith" can be an imprecise term. Webster's dictionary defines it variously as "with dispatch," "without delay," "within a reasonable time," and "immediately." (Webster's New Internat. Dict. (3d ed. 1971) p. 895.) Professor Richard Wydick calls such words "lawyerisms" and explains: "They give writing [or speech] a legal smell, but they carry little or no legal substance. When they are used in writing addressed to nonlawyers, they baffle and annoy. When used in other legal writing [or speech], they give a false sense of precision and sometimes obscure a dangerous gap in analysis." (Wydick, Plain English for Lawyers (1985) p. 53.)

Counsel for National declares we must interpret "forthwith" to mean "at once" or "immediately" because he has been in court innumerable times

when the court said "forthwith," and he took the term to mean "right now." But language has meaning only in context. Accordingly, in deciphering the actions of the trial court, we take the circumstances of the statement as a whole, putting them into the context of a motion to vacate forfeiture and exonerate bail and considering, also, the subsequent notice mailed to National.

Immediacy, if that is what the court meant by "forthwith," is a relative term, especially in bail forfeiture proceedings. Former section 1305 provided for vacation of forfeiture and exoneration of bail "immediately" when "the defendant appears and satisfactorily excuses the defendant's neglect or shows to the satisfaction of the court that the absence was not with the connivance of the bail . . . ." Yet, the order vacating forfeiture and exonerating bail must provide for payment of costs for the return of the defendant to custody as a condition of relief (§ 1306, subd. (b)), and the court may not require payment of the costs until 30 days have elapsed after notice of the order is mailed to the surety (§ 1305.2). Even though former section 1305 called for immediate vacation of forfeiture and exoneration of bail, it could not take place until at least 30 days after the order unless the surety paid costs at an earlier time voluntarily. Accordingly, we conclude the trial court's use of the word "forthwith" in making its order for payment of costs meant little if anything.

That the trial court did not state from the bench a due date for payment of costs by National did not divest the court of jurisdiction. Section 1305.2 implicitly requires the court to give notice of the due date, but it does not require the court to articulate a due date from the bench during the motion to vacate forfeiture and exonerate the bond. As quoted above, section 1305.2 requires the clerk of the court to mail notice of any costs assessed to the surety within 30 days. The statute does not explicitly state that the notice must contain a due date, but it provides, "The time limit for payment shall in no event be less than 30 days after the date of mailing of the notice." Thus, the surety must somehow be notified of the due date.

The *Ranger* court broadly stated: "Section 1305.2 clearly contemplates that conditional orders exonerating bail set forth a time limit for the payment of assessments and that sureties be provided notice thereof." (9 Cal.App.4th at p. 1307.) However, we need not take this statement as a decree that the judge must include the due date for costs when issuing the order from the bench. In *Ranger*, neither the judge nor the clerk of the court notified the surety of a due date. (*Id.* at p. 1304.) Section 1305.2 defines the minimum period of time for paying costs with reference to the date the notice is mailed to the surety. Accordingly, section 1305.2 contemplates that a notice sent to

the surety will specify the due date in conformity with the minimum period for paying set by the statute. The notice did so here.

National never paid the costs, although it does not assert the costs were improper. Its contention the trial court could not enter summary judgment based on the failure to vacate forfeiture is without merit. The court validly notified National of the due date for payment of the costs.

## II

### *Discrepancy Between Order and Notice*

■ National also complains the amount of costs in the notice from the clerk was $16 more than the amount of costs in the judge's order. It asserts the discrepancy "deprived it of jurisdiction to continue with forfeiture proceedings and to enter summary judgment." Hoping this elephant will fly, National cites section 1305.2, which requires the clerk of the court to notify the surety of "the assessment." If the amount in the notice varies from the amount in the court's order, National reasons, the clerk has not notified the surety of "the assessment."

Elsewhere in its briefing, National refers to the amount of costs a court may order as a condition of vacating a forfeiture as "min[u]scule." Indeed, $94, as stated by the court, or $110, as stated in the notice, is minuscule compared to the thousands of dollars which insure the return of criminal defendants to respond to charges against them. Beyond that, $16 is de minimis. "De minimis" is an archaic Latin term which lawyers and judges use to indicate something is too small and insignificant to concern them. The Legislature expressed the concept in modern terms in 1872: "The law disregards trifles." (Civ. Code, § 3533.)

The $16 discrepancy between the order and the notice neither divested the trial court of jurisdiction nor justified National's failure to pay the costs. The contention is without merit.

## III

### *Amount of Judgment*

■ Assuming the order and notice were valid, National argues the trial court could only enter judgment in the amount of the costs, not the full amount of the bond. It quotes *Ranger*: "Furthermore, the summary judgment for the amount of the bail bond for [the surety's] failure to pay the unauthorized costs was clearly penal. Forfeiture of the bail in this instance would

serve no purpose but to punish [the surety]. [The defendant] was already in custody. The county was not entitled to the full amount of the bond as well as having [the defendant] in custody." (9 Cal.App.4th at p. 1309.)

National claims this passage means after a defendant is returned to custody the trial court has no authority to enter judgment for the full amount of the bond. However, the *Ranger* court had no occasion to reach this issue. Just after the passage quoted by National, the *Ranger* court states the true reason for its holding: "The housing and care costs were not a 'just' condition of the bail exoneration . . . ." (9 Cal.App.4th at p. 1309.) If the passage can be taken to mean the trial court loses authority to enter summary judgment *anytime* the defendant is returned to custody, it is dicta.

Former section 1305 required the trial court to "direct the forfeiture of the undertaking . . . to be set aside and the bail . . . exonerated immediately" "under terms as may be just . . . ." A mandatory condition for setting aside the forfeiture is payment of costs of returning the defendant to custody: "If a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody pursuant to Section 1305, except for cases where the court determines that in the best interest of justice no costs should be imposed. The amount imposed shall reflect the actual costs of returning the defendant to custody." (§ 1306, subd. (b).)

Adoption of National's assertion would render void section 1306, subdivision (b). Costs would no longer be a condition of relief. The face of the statute refutes National's position. While it may be harsh, it is clear the Legislature meant to condition the vacation of forfeiture and exoneration of bail on the payment of costs. National's assertion is without merit.

This assertion is a variation on the argument advanced by counsel for National twice before. (See *People* v. *American Bankers Ins. Co.* (1991) 233 Cal.App.3d 561 [284 Cal.Rptr. 617] (*American Bankers II*); *County of Los Angeles* v. *American Bankers Ins. Co.* (1988) 202 Cal.App.3d 1291 [249 Cal.Rptr. 540] (*American Bankers I*).) In the two previous cases, counsel argued the court had a duty to vacate forfeiture and exonerate bail on its own motion immediately upon the return of the defendant to custody. (*American Bankers II, supra,* at p. 566; *American Bankers I, supra,* at p. 1293.) The argument made by counsel in this case is similar because in those cases counsel argued forfeiture had to be vacated and bail exonerated solely

because the defendant was returned to custody. Those courts rejected his argument. They held the surety must comply with the statutory mechanisms and conditions before relief would be granted. (*American Bankers II, supra,* at p. 570; *American Bankers I, supra,* at p. 1295.) Similarly, we hold the surety must meet the statutory conditions imposed by the trial court before forfeiture is vacated and bail exonerated. When the conditions have not been timely met and the time for vacating forfeiture and exonerating bail has expired, the prosecuting authority is entitled to summary judgment for the full amount of the bond.

DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied February 28, 1995, and appellant's petition for review by the Supreme Court was denied April 20, 1995.